Filed 3/3/15  P. v. Fox CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>        v.<br><br>NIKKI FOX,<br><br>     Defendant and Appellant. | F067380<br><br>(Super. Ct. No. VCF266744)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Tulare County.
H. N. Papadakis, Judge.  (Retired Judge of the Fresno Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P.J., Franson, J. and Smith, J.

# PROCEDURAL AND FACTUAL SUMMARY

Appellant Nikki Fox was charged in an information with a felony count of second degree robbery (Pen. Code, § 211, count 1) (undesignated statutory references are to the Penal Code) and being a felon in possession of a firearm (§ 29800, subd. (a), count 2). The complaint alleged in count 1 an allegation that appellant personally used a firearm in the commission of robbery (§§ 12022.53, subd. (b) & 12022.5, subd. (a)) and use of a firearm (§ 1203.06, subd. (a)(1)). The information also alleged that appellant was released on bail when she reoffended.

A jury trial commenced on April 2, 2013.[1] On April 4, 2013, the jury found appellant guilty of counts 1 and 2 and found true the allegations that appellant used a firearm during the commission of the robbery. On May 21, 2013, the trial court sentence appellant to prison for three years on count 1, a consecutive term of 10 years for the firearm enhancement, a consecutive term of eight months for being a felon in possession of a firearm, and a consecutive term of two years for the on-bail enhancement. Appellant's total sentence in the instant action is 15 years 8 months.[2] Appellant was granted 400 days of credits for time in actual custody, conduct credits of 60 days, and total custody credits of 460 days.

Appellate counsel has filed a brief seeking independent review of the case by this court pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

# FACTS

*Prosecution Evidence*

At 7:00 p.m. on April 14, 2012, Vickie Lucas was working at Cigarettes 4 Less. Appellant was a regular customer. Lucas was working alone. Appellant entered the

---

[1] Appellant waived her right to a jury trial for the on-bail enhancement, which was found true in a bifurcated proceeding at conclusion of the trial.

[2] Appellant was also sentenced to consecutive prison terms of one year eight months on two other unrelated criminal actions for a total prison term of 17 years 4 months.

2.

store, threw a purple and gold Crown Royal bag on the counter, and demanded money. Appellant said, "I gotta do it, hurry up." Lucas moved to the register and replied, "Please don't do this, you don't have to do this, please don't do this." Lucas pushed a panic button next to the register several times as she was talking. Appellant waived a black gun and said, "Hurry up before it gets ugly." Lucas opened the register and gave appellant money. Appellant placed the money in the bag and ran out of the store.

Lucas locked the store and called 911. Lucas reviewed video footage of appellant's robbery with the jury, which was admitted into evidence. Visalia Police Officer Michael Patrick Bischel, Jr., responded to the emergency call, spoke to Lucas after the incident, and observed her to be frightened and shaken up.

Blanca Gomez worked for the Marco Polo Hotel and knew appellant because she rented a room at the hotel. Around April 10, 2012, appellant asked Gomez if she could use Gomez's cell phone. Gomez told appellant it was in the laundry room. Appellant told Gomez she could not go to the laundry room "because I have this." Gomez saw the handle of a black gun in appellant's sweater. Gomez could not tell the difference between a real gun and a fake one.

When appellant was arrested, she told Detective Nelson that she threw the gun in the trash. The prosecution entered into evidence a jail call between appellant and her daughter. During the telephone conversation, appellant said: "Do you know how stupid I feel[?] I feel so stupid, and then what I did, an armed robbery. Oh my God, for reals. Really. Really, seriously, really, come on that's not me, you know that. That's not me. It was the drugs."

### Defense Evidence

Lucas had previously purchased clothing and hair products from appellant. When asked by Detective Nelson if she knew whether the property was stolen, Lucas told him she was on a limited budget, needed some of the items, and that she was also helping appellant.

3.

Appellant testified that she had known Lucas for about eight months. They saw each other at Cigarettes 4 Less every day or every couple of days. Appellant and Lucas would see each other outside of Cigarettes 4 Less. They would shop together and discuss their children. According to appellant, three weeks earlier, she and Lucas discussed staging a robbery. According to appellant, Lucas said she had been robbed many times before and it needed to look real because she did not want to lose her job. The robbery was supposed to happen a week earlier than it did, but appellant was under the influence and "just wasn't really into it."

The morning of the theft, when Lucas was not working, appellant went to Cigarettes 4 Less to pick up a plastic gun Lucas had left for appellant next to the front door. Later that day, appellant went to the store, placed the Crown Royal bag on the counter, and asked Lucas if she was ready. Lucas hesitated and said she was not sure she could do it. Appellant explained that she had to make up her mind because appellant would have to go hustle. Appellant admitted waiving a plastic dart gun during the theft. Appellant gave the toy gun to the child of a friend.

After appellant left the store, she was standing next to a donut shop. Lucas came outside, looked at appellant, and appellant said she would see Lucas later. The evening of the theft, Lucas and appellant met in a room at Motel 6 that was rented by Melvin Keehn. Appellant said she gave Lucas $100 of the $180 taken from the theft.[3]

Appellant denied possessing or ever holding a real gun. During a jail conversation on April 20, 2012, appellant told another caller that she did not have a gun. Appellant explained her jail conversation with her daughter as only an admission of the allegations with which she was charged. During a jail conversation on May 12, 2012, appellant said "they never recovered a gun or nothing and they said I had a gun, but I didn't have no

---

**3**      In addition to instructions on robbery, the jury was instructed on the lesser offenses of attempted robbery, theft by larceny, and petty theft.

fucking gun, I know you know I don't fuck with guns." Appellant told Detective Nelson that the theft was planned in advance, she used a toy gun, and Lucas was given a share of the money in a hotel room.

## APPELLATE COURT REVIEW

Appellant's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*Wende*, *supra*, 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating that appellant was advised she could file her own brief with this court. By letter on January 30, 2014, we invited appellant to submit additional briefing. To date, she has not done so.

After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

## DISPOSITION

The judgment is affirmed.